## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PSARA ENERGY, LTD.,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION** |
| | § | |
| **SPACE SHIPPING, LTD.; ADVANTAGE AVENUE** | § | **NO. 2:16-CV-04840-WB** |
| **SHIPPING, LLC; GENEL DENIZCILIK** | § | |
| **NAKLIYATI A.S. A/K/A GEDEN LINES;** | § | |
| **ADVANTAGE TANKERS, LLC; ADVANTAGE** | § | |
| **HOLDINGS, LLC;** | § | |
| **FORWARD HOLDINGS, LLC; MEHMET EMIN** | § | |
| **KARAMEHMET and GULSUN NAZLI** | § | |
| **KARAMEHMET WILLIAMS** | | |
| **Defendants.** | | |

## DEFENDANTS' MOTION AND BRIEF TO VACATE ATTACHMENTS AND DISMISS

Plaintiff Psara Energy, Ltd. ("Psara") obtained the *ex parte* attachment of M/V ADVANTAGE AVENUE (the "Vessel") pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") Supplemental Rule for Admiralty or Maritime Claims Rule B ("Rule B") following the filing of a verified complaint September 9, 2016 (the "Psara PA Complaint"). Defendants Advantage Avenue Shipping, LLC, Advantage Tankers, LLC, Advantage Holdings, LLC, Forward Holdings, LLC, and Gulsun Nazli Karamehmet Williams (collectively, the "Advantage Defendants"), making their appearance specially and not generally and pursuant to F.R.Civ.P. Rule E(8), and expressly reserving all defenses, particularly as to venue, personal jurisdiction, and subject matter jurisdiction, respectfully move to vacate (the "Motion to Vacate") the attachment obtained by Psara in this action.

## I.      INTRODUCTION

The instant case is an outrageous attempt to re-litigate Plaintiff's alter ego allegations that were fully explored in discovery, briefed, and the subject of an evidentiary hearing before the United States District Court for the Southern District of Texas.  Psara's alter ego allegations have

been completely rejected by that Court, but Psara nevertheless initiated the instant case without advising this Court that Psara's alter ego claims have already been litigated and that Psara lost.[1] Psara should be precluded from re-litigating the same claims and issues under the doctrine of collateral estoppel.  In any event, Psara also fails to make a *prima facie* veil piercing argument under applicable law and the attachment should also be vacated on this basis.  Finally, Psara has also failed to join a necessary party – the alleged central link in the chain of alleged alter egos – because that entity is present in this district and naming it would prevent Psara's access to Rule B.  The fact that Psara effected the attachment of the Vessel on deficient and misleading papers on a Friday afternoon before the commencement of the Eid holiday (as Psara knows, the Advantage Defendants' owners and employees are Turkish, and that country is essentially closed for the Eid holiday this week) speaks volumes about the true intent of this action.

## II.   FACTS

Psara is also a plaintiff in civil action no. 15-1645, consolidated with civil action no. 15-1675, pending before the United States District Court for the Southern District of Texas, Houston Division (the "Texas Action").  A copy of the docket report for the Texas Action is attached to the accompanying Statement of Facts sought by the Court pursuant to its Order of September 14, 2016 (the "SOF") ¶ 1, Ex. 1.  Psara is one of three (3) companies all under common ownership, each of which filed a verified complaint that was consolidated into the Texas Action.  Id., ¶ 2, Ex. 1, Docket 12, 15.  The related companies that are plaintiffs in the Texas Action are Psara, Tank Punk, Inc., and Eclipse Liquidity Inc. (the "Texas Plaintiffs").  Id. ¶ 3.  The complaints filed by each of the Texas Plaintiffs are nearly identical but for the amounts claimed.  Id. ¶ 4.

The Texas Plaintiffs alleged breaches of certain charters (contracts for the use of a ship)

---

[1]   At the outset, it is highly objectionable that Plaintiff would disregard its obligation of candor to the Court, especially in the context of *ex parte* attachment proceedings, and fail to advise the Court of the status of the Texas Action or the findings adverse to Psara's alter ego allegations.

by Defendants "Genel Denizcilik Nakliyati A.S. a/k/a Geden Lines" ("Geden Lines") and Space Shipping (the "Geden Defendants"). See, e.g. SOF Ex. 2, ¶¶ 10-14. Psara sought and obtained the *ex parte* attachment of assets in Texas belonging to the Advantage Defendants based solely on Psara's allegations that the Geden Defendants and the Advantage Defendants are alter ego entities such that the corporate veils between each of these groups of companies should be pierced and the two groups subsequently treated as one. Id. ¶ 6, Ex. 2, ¶¶ 18-40.

The Advantage Defendants moved to vacate the attachments in the Texas Action on the grounds that they are not alter egos of the Geden Defendants. SOF ¶ 7, Ex. 1, Docket 16. Psara objected to the Advantage Defendants' Motion to Vacate, arguing in part that they were entitled to limited discovery on the issues of jurisdiction and the alter ego allegations. Id. ¶ 8, Ex. 1, Docket 20.

By Order dated October 23, 2015 the Texas Court granted "discovery on the alter ego theor(ies) that have been alleged . . .". SOF ¶ 9, Ex. 3. The Court further Ordered that, at the conclusion of discovery, the parties appear for an evidentiary hearing. Id.; SOF Ex. 1, Docket 30.

Psara sought the production of documents by, and the depositions of, the Advantage Defendants. SOF ¶ 11, Ex. 4. The Advantage Defendants produced over 5,000 pages of documents and the three witnesses sought by Psara, with the depositions taking place in London, England earlier this year. Id. ¶ 12. The Texas Plaintiffs produced a single witness, the general counsel for the Texas Plaintiffs' common owner and few if any party documents. Id. ¶ 13.

When the Advantage Defendants were produced for deposition, counsel for Psara listed Psara as a Plaintiff and appeared on the record for Psara. SOF ¶ 14, Ex. 5. Following the exchange of documents and depositions, the parties fully briefed the alter ego allegations made by Psara and the other Texas Plaintiffs and appeared for oral argument before Magistrate Judge

Frances H. Stacy on February 9, 2016.  Id. ¶ 15, Ex. 1, Docket 45.

In a fully reasoned and detailed Order entered July 6, 2016, Magistrate Judge Stacy issued a Report and Recommendation (the "Report") granting the Advantage Defendants' Motion to Vacate.  SOF ¶ 16, Ex. 6.  The Report is devastating to Psara's alter ego allegations, finding that the Texas Plaintiffs had failed to produce "*any*" evidence to support their alter ego claims (Id. ¶ 17, Ex. 6, p. 12, emphasis in original); that the allegations were "mere speculation" (Id., p. 17); and that there was "no substantive claim against the Advantage Defendants" (Id., p. 25).  Magistrate Stacy recommended that the Texas Actions be dismissed and the attachments obtained vacated.  Id..

Following the issuance of the Report, Psara and the other Texas Plaintiffs objected to the Report by filing objections with the District Court.  SOF ¶ 19; SOF Ex. 1, Docket 70 – 71. These objections remain pending before the District Court, which is considering the Report. See SOF Ex. 1.

In the instant action, Psara attached the Vessel pursuant to a writ of attachment issued based on the allegations contained in the Psara PA Complaint.  Docket 1.  However, the Psara PA Complaint fails to advise the Court that Psara has already fully litigated the alter ego issue with the Advantage Defendants in Texas.  See Psara PA Complaint.  The Psara PA Complaint also fails to note that Psara's claims in the Texas Action have been found totally devoid of merit, and that the presiding Magistrate has issued the Report recommending dismissal of the attachment obtained in that action.

There is no doubt that Psara is fully aware that the resolution of the alter ego claims in the Texas Action controls Psara's ability to attach property belonging to the Advantage Defendants. Psara has also attached property belonging to the Advantage Defendants in New Orleans under docket 16-cv-1305 (the "New Orleans Action").  SOF ¶ 21.  Recently, Psara sought a stay of that

- 4 -

case, arguing that "[w]here another ongoing proceeding is likely to settle common questions of fact common to all actions pending '…considerations of judicial economy and avoidance of confusion and possible inconsistent results may militate in favor of staying the entire action.'" SOF ¶ 22, Ex. 7.  By Order filed July 11, 2016, the New Orleans Court granted the Motion to Stay pending "a final ruling on the motion to vacate attachment pending" in the Texas Action. Id., ¶ 23, Ex. 8.

The Psara PA Complaint, at footnote 3, states that Psara "agreed to dismiss its claims" in the Texas Action, but as a review of the docket for that case shows, Psara has not dismissed any of its claims in the Texas Action.  See SOF Ex. 1.

### III.   ARGUMENT

#### (i)   Plaintiff Has the Burden to Make a Prima Facie Case

In order to uphold the instant attachment, Plaintiff has the burden to show that it has a *prima facie* case.  Pursuant to F.R.Civ.P. E(4)(f) "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."  Once a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f), and "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Naftomar Shipping and Trading Co. v. KMA Intern. S.A.*, 2011 WL 888951, *2 (S.D.TX 2011).

Plaintiff has used Rule B to attach property belonging to the Advantage Defendants.  In order to show that the attachment of the Advantage Defendants' property was proper, Plaintiff must show that: (1) it has a valid *prima facie* admiralty claim against Defendants; (2) none of the Defendants can be found within the district; (3) Defendant's property may be found within the

- 5 -

district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.,* 585 F.3d 58 (2d Cir. 2009)).  Here, the attachment should be vacated because: (1) Psara is collaterally estopped from making this attachment because Psara has already litigated this issue; (2) Psara fails to make out a *prima facie* claim that would support corporate veil piercing; and (3) Psara has failed to name a necessary party.

### *(ii)*     Plaintiff is Collaterally Estopped From Making the Same Claims the Texas Court Found Meritless

Psara is collaterally estopped from raising the same alter ego and veil piercing claims it raised in the Texas Action.  "[U]nder the doctrine of collateral estoppel . . . a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit."  *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S. Ct. 865, 867, 99 L. Ed. 1122 (1955)).  The Third Circuit has "consistently applied" the Restatement (Second) of Judgments' rule for applying collateral estoppel to federal court judgments.  *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002).  This rule states "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Id.  When "determining whether the issue was essential to the judgment, [the court looks] to whether the issue was 'critical to the judgment or merely dicta.'"  Id. at 527 (internal citation omitted).

As the Restatement (Second) of Judgments states, an issue is actually litigated when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is

determined . . .   A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof."   Restatement (Second) of Judgments § 27 Comment d (1982).  Finality in the collateral estoppel context is "'a more 'pliant' concept than it would be in other contexts,'" and finality "'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'"  *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (quoting *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980)).   Under this pragmatic approach, a final judgment "includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect."  *Dyndul*, 620 F.2d at 412 (quotation omitted); see *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001); see also Restatement (2d) of Judgments § 13, Comment g ("In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. . . . Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered.").

In this case, the Psara PA Complaint repeats the same alter ego allegations the Texas Court strongly rejected.  While it is true that the Report remains before the District Court for review, there is no question that the Report is a detailed and comprehensive review of the evidence produced in the Texas Action following extensive written and oral argument.  Psara is simply trying to take advantage of the time between the issuance of the Report and the decision of the District Court to bring exactly the same claims in another jurisdiction.  This effort to avoid the consequences of a ruling that Psara does not like should be roundly rejected, and the attachment obtained by Psara in this action should be vacated.

<em>(iii)</em>     <strong>Plaintiff Fails to Make a <em>Prima Facie</em> Corporate Veil-Piercing Claim and Cannot Attach Property Belonging to the Advantage Defendants</strong>

The attachment should be vacated because Plaintiff has not made a valid *prima facie* claim to pierce the corporate veil and attach property belonging to the Advantage Defendants (in this case, the Vessel is owned by Advantage Avenue Shipping, LLC).[2] In a corporate veil piercing case, "[s]uch a burden is notoriously difficult for plaintiffs to meet." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001). In order to successfully make out a *prima facie* case to pierce the corporate veil between separately organized business entities, Plaintiff must allege that the target company was (i) completely dominated by its alleged alter ego and (ii) that this domination led to a wrong.[3] *Pearson*, 247 F.3d 484-485. Psara cannot carry this burden because the Psara PA Complaint does not meet the legal requirements for alleging alter ego/veil piercing in the Third Circuit.

In order to determine whether or not the veil should be pierced: "[t]he alter-ego analysis weighs the following factors: 'gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson*, 247 F.3d 484–85. Under the alter-ego test, the plaintiff is

---

[2]   Plaintiffs also fail to allege any exceptional circumstances justifying this extraordinary remedy: "The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citation omitted).

[3]   Plaintiff makes no actual allegations of fraud or injustice, other than to allege that they have not received certain charter payments allegedly owed by the Geden Defendants (a complaint that sounds in contract, not fraud). The primary allegation of Plaintiff as it relates to the sale of the vessels is that Geden publicly represented itself as the owner and operator of a fleet of tanker and dry cargo vessels. While this may be true, Plaintiff does not allege that Geden ever represented that none of its vessels would be sold, or that Plaintiff could look to those assets to secure breach of charter claims. Nor does Plaintiff allege (because it cannot) that it ever had a lien, claim, security, or other interest in any of the vessels owned by Geden and subsequently sold to Advantage and its subsidiaries. Since there is no allegation that these assets were ever represented to be a source of security for Plaintiffs, they should not be heard to now complain about the sale of these vessels at market prices.

WFW 80457836v2

required to show, in essence, "that in all aspects of the business, the ... corporations actually functioned as a single entity." Id. at 485.  The plaintiff must also prove that the corporate form was abused, with a showing "akin to … fraud." *Trustees of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 194 n.7 (3d Cir. 2003); *Energy Marine Servs., Inc. v. DB Mobility Logistics AG*, No. CV 15-24-GMS, 2016 WL 284432, at *3 (D.Del. 2016).

Psara does not allege that any of the Defendants, including the Advantage Defendants, were grossly undercapitalized.  See Psara PA Complaint.  Plaintiff makes no allegations that any of the Advantage Defendants failed to observe corporate formalities.  Id.  The Psara PA Complaint is also devoid of allegations that any of the Advantage Defendants failed to pay dividends or that they are insolvent.  Id.  Nor are there any allegations that the dominant stockholder has siphoned funds from the alleged alter ego or that officers and directors in any of the Advantage Defendants do not serve a function.  See Psara PA Complaint.  A review of the Psara PA Complaint shows that it also has no allegations that any of the Advantage Defendants fail to keep corporate records.  Id.  Finally, Psara does not allege that the Advantage Defendants are merely a facade for the operations of the dominant stockholder.  Id.  In other words, Plaintiffs make none of the allegations required by *Pearson*.

In fact, the Advantage Defendants respectfully note that the entire corporate veil piercing theory advanced by Plaintiff is unorthodox and unusual.  The majority of alter ego cases involve an overreaching corporate officer or a parent-subsidiary relationship.  Here, Psara advances a theory that would require the Court to pierce the corporate veils of all of the Geden Defendants and all of the Advantage Defendants, and then to link the two groups.

Instead of alleging factors that would support an alter ego claim, Psara instead alleges alter ego liability based on: (1) "Successor Corporation Relationship"; and (2) "Fraudulent Conveyance Allegations".  Psara PA Complaint pp. 8, 14.  Neither of these legal theories is

cognizable, and hence the attachment should also be vacated on this basis.

   a) *Psara Does Not Allege a Prima Facie Successor Liability Claim*

   Successor corporation liability in the Third Circuit is typically unavailable under the general rule that "when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor". *LaFountain v. Webb Industries Corp.*, 951 F.2d 546-7 (3d Cir. 1991). One of the exceptions to the general rule barring successor liability is found in products liability cases, while another is found where a business is continued under another name. While Psara does not identify what theory it is pursuing, the gravamen of the Psara PA Complaint indicates a business continuation theory. However, in the Third Circuit a "continuation demands 'a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer.'" *Polius v. Clark Equipment Co.*, 802 F.2d 75, 86 (3d Cir. 1986) citing *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir. 1977). Here, the Psara PA Complaint does not allege that there is a common identity of stock or stockholders, and an examination of the caption reveals numerous alleged successors. Psara's successor liability allegations therefore do not make out a *prima facie* claim of successor liability under the law of this Circuit.

   b) *Psara Does Not Allege a Prima Facie Fraudulent Conveyance Claim*

   Psara also fails to allege a *prima facie* claim of fraudulent conveyance. To the extent such a cause of action is present under federal law, it is a bankruptcy concept used in the debtor-creditor context. There is no admiralty law that provides a fraudulent conveyance cause of action, and hence any such allegations must be consistent with state law. *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir. 1998) (Finding District Court properly looked to state law for fraudulent conveyance cause of action in admiralty case).

Psara does not make any allegations under the Pennsylvania Uniform Fraudulent Conveyances Act ("PUFCA"), which even if made would require a choice of law argument showing why Pennsylvania law would apply.  Even if Psara could somehow apply PUFCA, § 359 of that Act, "Rights of creditors whose claims have matured", requires claimants to bring a mature claim.  Psara does not allege a matured claim, merely one Psara alleges it will eventually bring in London arbitration but which has not yet been adjudicated.  Accordingly, Psara's fraudulent conveyance allegations, even if true, would not establish the liability of any of the Advantage Defendants under PUFCA.

In other words, of the two corporate veil piercing theories advanced by Plaintiff, neither one is relevant, but even if one or both were Psara does not make allegations sufficient to make out a *prima facie* case.

### *(iv)* __Plaintiff Fails to Include a Necessary Party__

The mendacity of the Psara PA Complaint is revealed by its deliberate failure to join a necessary party.  Although Psara alleges Geden Holdings Ltd. ("Geden Holdings") is an alter ego of all the Defendants, and the linchpin binding all of the alleged alter egos, Plaintiff does not name Geden Holdings as a defendant because doing so would destroy one of the requirements for an *ex parte* Rule B attachment.  To support the attachment of the Vessel pursuant to Rule B, Plaintiff must show, *inter alia*, that the defendant is not present within the district.  See, e.g., *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d at 445.  A defendant is "found within the district" if it is subject to personal jurisdiction and service of process in the district.  See *West of England Ship Owners Mut. Ins. Ass'n (Lux.) v. McAllister Bros., Inc.*, 829 F.Supp. 122, 123 (E.D.PA. 1993).  In this case, Plaintiff alleges that its charter counterparty is Geden Holdings and its nominee.  Psara PA Complaint at ¶ 12-13.  Plaintiff also alleges that Geden Lines is owned by Geden Holdings and that Geden Holdings is "the controlling Seller

corporation." Psara PA Complaint at ¶¶ 26-27.  Yet while the Psara PA Complaint alleges that Geden Holdings is the central entity that ties together the companies that Plaintiff argues are part of the same enterprise, Plaintiff does not name this entity as defendant.  While this might appear to be mere oversight, it is in fact an artful, deliberate, and fatal omission.

Plaintiff's failure to name an alleged alter ego as a defendant is fatal to the Psara PA Complaint if this alleged alter ego entity is present in the jurisdiction.  Where alter ego liability is alleged, the presence of one of the alleged alter egos in the district will be imputed to all of the alleged alter ego entities.  See *Glory Wealth Shipping Pte Ltd. v. Industrial Carriers, Inc.*, 590 F.Supp. 2d 562, 564 (S.D.N.Y. 2008) ("if one defendant is present in the district for the purposes of issuing a maritime attachment, its alter egos are present as well").  Accordingly, if Geden Holdings is present in the Eastern District of Pennsylvania, the attachment must be vacated because one of the alleged alter egos is "present" in the District under the standard enunciated in *McAllister Bros.* and *Aqua Stoli*.

In this case, Geden Holdings is present in the district because it has registered as a foreign corporation to do business in Pennsylvania, and has appointed an agent for service of process in Philadelphia.  SOF ¶ 24, Ex. 9.   This registration and appointment of an agent is a matter of public record, and the Court is respectfully urged to take judicial notice of this publicly accessible filing.[4]  Geden Holdings is accordingly subject to jurisdiction and service of process in this district under

The practical effect of the failure to include as a defendant an entity that Plaintiff itself argues is an alleged alter ego of the named Defendants is that Plaintiff has failed to name a necessary party under F.R.Civ.P. 12(b)(7).  This defect is not curable, at least with respect to the

---

[4]     As with Plaintiff's failure to advise the Court of the adverse Report in the Texas Action, the failure to advise the Court that one of the alleged alter egos is present in this District is difficult to reconcile with the duty of candor to the Court in *ex parte* proceedings.

WFW 80457836v2

Rule B attachments, because if Plaintiff named Geden Holdings as a defendant, Plaintiff could not then avail itself of Rule B.  Leaving aside Psara's motivations for this omission, it is yet another reason why the attachment in this action should be vacated.

## CONCLUSION

Psara obtained *ex parte* relief and attached the Vessel, which is on hire to Shell, for debt that is allegedly owed by the unrelated Geden Defendants.  Psara did so without advising the Court that it has made the same claims in Texas and obtained full discovery on the same alter ego relationship alleged here, or that the Texas Court has found these allegations to be meritless. Psara's alter ego theory, which is unusual, fails to allege a *prima facie* alter ego claim under the law of this Circuit, further justifying vacatur.  Most egregiously, Plaintiff also deliberately omitted naming a necessary party, Geden Holdings, even though this company is alleged to be the key link in the alleged alter ego chain of Defendants.  Geden Holdings is not named as a defendant for the transparent reason that naming this entity would render Rule B unavailable to Plaintiff.

Defendants pray that the attachment be vacated, but that the Court retain jurisdiction over this matter so that the Advantage Defendants can subsequently seek damages for wrongful attachment and can move for attorneys' fees and costs. The Advantage Defendants pray for all other and further relief to which they may be justly entitled.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

/s/Richard Q. Whelan
Richard Q. Whelan
190 N. Independence Mall West
Suite 401
Philadelphia, PA 19106
(215) 625-7806
rwhelan@pbh.com

- 13 -

(*Pro Hac Vice*)
Neil A. Quartaro (NQ 9640)
Zachary Farley (ZF 1281)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com

WFW 80457836v2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that true and correct copies of this Statement of Material Facts in Support of Motion to Vacate, Motion and Brief to Vacate, Proposed Order and Exhibits 1 through 9 were served on the below listed counsel via email and ECF on the date appearing below:

> Mary Elisa Reeves, Esquire
> George Tadross, Esquire
> Reeves McEwing LLP
> 719 E. Passyunk Ave.
> Philadelphia, Pa. 19147
> reeves@lawofsea.com
> gtadross@lawofsea.com

**PALMER BIEZUP & HENDERSON** LLP

**By:**    **/s/Richard Q. Whelan**
          **Richard Q. Whelan (ID# 35688)**

**Dated:**  September 15, 2016

WFW 80457836v2